UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23300-CIV-UNGARO/SIMONTON

**MEDMARC CASUALTY
INSURANCE COMPANY,**

 Plaintiff,

v.

**ENRIQUE VENTURA, et al.,**

 Defendants.
_____/

## ORDER ON PENDING DISCOVERY MOTIONS

Presently pending before the Court is Plaintiff's Motion for Protective Order (DE #46) and Defendants' Motion to Compel and for Sanctions (DE # 48). These motions are fully briefed (DE ## 47, 59, 60, 61) and have been referred to the undersigned Magistrate Judge (DE ## 51-52). A hearing was held before the undersigned Magistrate Judge on September 18, 2008 and this Order sets forth the rulings made on the record during the hearing. The undersigned has carefully reviewed the record as a whole, and for the reasons stated at the hearing and incorporated herein, Plaintiff's Motion for Protective Order (DE # 46) is GRANTED IN PART AND DENIED IN PART; and, Defendants' Motion to Compel (DE # 48) is GRANTED IN PART AND DENIED IN PART.

 I. **BACKGROUND**

This is an action for a declaratory judgment filed by Plaintiff Medmarc Casualty Insurance Company ("Medmarc") against its insured Enrique Ventura and others who have either sued him, or are his co-defendants in a case now pending in state court (DE # 1). Medmarc provided professional liability coverage to defendant Enrique Ventura in connection with Ventura's practice of law. According to the Complaint in the case at

bar, Ventura has been sued in connection with legal services he provided regarding the formation of a business venture.  The Complaint alleges that the business venture involved the creation of two business entities–PMF Builders Corporation and PMF Builders, LLC–which, respectively, sought to develop a housing project known as Cedar Groves Estates and a condominium project known as Los Sueños de Brickell.  The Complaint further alleges that the individuals involved in the business venture were Mario Pino, Lazaro Martin and Jose Luis Fulgueira.  Medmarc is providing a defense to Ventura in the underlying lawsuit.

A copy of the complaint filed in the underlying lawsuit is attached to the Complaint filed in the case at bar.  In state court, Mario Pino, individually and on behalf of both PMF entities has sued Ventura, Martin, Fulgueira and others for declaratory relief and damages.  The underlying lawsuit alleges, *inter alia*, that defendants Martin and Fulgueira breached their fiduciary duties and converted proceeds from the projects, and that defendant Ventura aided and abetted them, and committed legal malpractice and breached his fiduciary duties, in a variety of ways, to Pino and the PMF entities.  Defendant Fulgueira has filed a cross-claim against defendant Ventura, alleging that Ventura was retained by Fulgueira, as well as the PMF entities and another entity, and that Ventura has committed malpractice and breached his fiduciary duties to Fulgueira based upon his conflicts of interests and the erroneous legal advice provided to Fulgueira (DE # 1).

The insurance policy at issue has a $500,000.00 per claim limit of liability, and an aggregate $1 million limit of liability.  The dispute in the case at bar centers on the meaning of the language in the insurance policy which states:

> Two or more **"Claims"** arising out of a single act or
> omission, ... or a series of **"Related acts or omissions"**...
> shall be treated as a single "Claim".

Medmarc contends that its limit of liability in the underlying case is $500,000 because all of the alleged acts or omissions committed by the insured attorney "are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, advice or decision," under the meaning of the insurance contract, since they all took place in the context of his role as general counsel of the business venture (DE # 1 at 5-7).  Defendants, on the other hand, assert that the $1 million aggregate limit of liability is applicable because the allegations in the underlying lawsuit against the insured attorney constitute "multiple occurrences," as they involve "acts, omissions, activities and advice that the insured provided to multiple individuals and entities . . . over different periods of times with respect to different transactions" (DE # 7 at 9-10).[1]

On July 17, 2008, Defendants noticed the deposition of Medmarc's corporate representative with the most knowledge of the following areas of inquiry:

    (a)    how the Plaintiff insurer has interpreted the subject policy language in the past;

    (b)    the interpretation of the applicable limits of liability with respect to multiple claims pursuant to the terms of the policies;

    (c)    [the] facts, events and circumstances relating to the Plaintiff's contention that the malpractice claims are related and/or arise out of common facts, events and/or transactions; and

---

[1] At the hearing on the presently pending discovery motions, in response to the Court's question, for background purposes, regarding whether this issue could be resolved without a determination in the state proceedings as to what, if any, acts of malpractice had been committed, the parties advised this Court that the policy was a "wasting" policy that was eroded by the costs of defense.  Therefore, the state court proceedings have been stayed pending a resolution by this Court regarding the scope of coverage.

>   **(d)** [the] interpretation, enforcement and meaning of the operative policy terms that the Plaintiff relies upon in support of its contention that the malpractice claims are related and/or logically connected by common events, facts and/or transactions

(DE # 42 at 2).

The deposition was initially scheduled to take place after the close of the discovery period;[2] and so, on August 1, 2008, Defendants re-noticed the deposition to take place on Monday, August 18, 2008 (DE # 44). On Friday, August 15, 2008, however, Medmarc objected to the deposition, arguing that the areas of inquiry did not address any topics relevant to the declaratory action; and, on the morning of August 18, 2008, Medmarc informed Defendants that its corporate representative would not appear at the deposition (DE # 48). The discovery deadline expired on September 5, 2008; all motions other than motions *in limine* must be filed by October 3, 2008; and, trial is set for the two-week period commencing December 8, 2008 (DE # 19).

## II.   THE PARTIES' POSITIONS

Medmarc asserts that, under Florida law, the interpretation of an insurance contract is a matter of law, not fact; that an unambiguous insurance contract must be enforced according to its plain terms; and, that an ambiguous insurance contract must be strictly construed against the drafter-insurer. Therefore, according to Medmarc, the deposition of its corporate representative regarding her interpretation of policy provisions will not yield any relevant information (DE # 46 at 2-4). Medmarc adds that the deposition of its corporate representative will implicate concerns relating to the work-product and attorney-client privileges (DE # 46 at 4-5).

Defendants respond that this case concerns a factual dispute and that they are

---

[2] The deposition was initially set for October 15, 2008.

entitled to depose Medmarc's corporate representative regarding Medmarc's interpretation of the relevant provisions and to have Medmarc "further explain what particular facts, events and/or circumstances render the underlying malpractice claims essentially a single claim" rather than multiple claims (DE # 47 at 1-2). Defendants also contend in their briefs that sanctions should be imposed against Medmarc (1) because the deposition had been noticed for a month and yet Medmarc waited until the eve of the deposition date to object; and (2) because Medmarc failed to appear at the deposition, even though the filing of a motion for protective order does not relieve a party of its obligation to appear at a properly noticed deposition (DE # 47 at 3). At the hearing, however, Defendants withdrew their motion for sanctions, except they requested the Court to Order that Medmarc be responsible for any additional costs associated with obtaining an expedited transcription of the deposition as a sanction, in light of the fact that Medmarc could have objected to the deposition at an earlier date, thereby eliminating the need to obtain a transcript on an expedited basis.

   III.   ANALYSIS
   A.   Merits

There is no dispute that Florida law governs this declaratory action concerning the interpretation of an insurance contract. During the hearing, the parties agreed that, under Florida law, an unambiguous insurance contract must be construed according to its plain terms, without resorting to extrinsic evidence. *See Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). Medmarc also conceded at the hearing that "[a]n ambiguous provision is construed in favor of the insured and strictly against the drafter," *id.*, meaning that in the event the Court determines the policy language is ambiguous, Defendants will automatically prevail in the instant declaratory

5

action.  *See Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 271 (Fla. 2003); *Deni Assoc. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998) (rejecting doctrine of "reasonable expectations," stating, "There is no need for it if the policy provisions are ambiguous because in Florida ambiguities are construed against the insurer [and t]o apply the doctrine to an unambiguous provision would be to rewrite the contract ....")   In sum, if the policy provisions at issue are unambiguous, they will be enforced as written; and, if the policy provisions are ambiguous, they must be construed strictly against Plaintiff and in favor of Defendants.  The undersigned therefore finds that the areas of inquiry identified as subsections (a), (b) and (d) in the deposition notice are irrelevant, insofar as they relate to Medmarc's interpretation of the disputed policy language in the past; or its basis for believing that its construction of the disputed provisions is correct (DE # 42 at 2, subsecs. (a), (b) and (d)).  *See Allstate Ins. Co. v. Swain*, 921 So. 2d 717, 719 (Fla. Dist. Ct. App. 2006) (quashing orders which compelled discovery concerning, *inter alia*, drafting, marketing and interpretation of insurance policy, holding that construction of policy is a matter of law and if it is ambiguous, the ambiguity will be resolved against the insurer; therefore, the requested discovery was "completely unnecessary to the determination of the coverage issue.")

   Defendants are, however, permitted to inquire into the topics identified in subsection (c) of their deposition notice, which covers the underlying facts and events that gave rise to the malpractice and breach of fiduciary duty claims against the insured attorney and are central to the instant declaratory action (DE # 42 at 2, subsec. (c)).  Medmarc argues that its corporate representative will have no first-hand knowledge concerning those underlying events, but that is a question of admissibility, not relevance.  The undersigned concludes that a deposition of Medmarc's corporate

representative is reasonably calculated to lead to admissible evidence as the areas of inquiry set forth in subsection (c) of the deposition notice may assist Defendants in identifying percipient witnesses or uncovering documentary evidence.

Medmarc insists that Defendants should be precluded from conducting any deposition of its corporate representative – even as to the narrowly defined scope of relevant topics set forth above – because it believes that any deposition will impinge on its right to protect privileged work product and attorney-client matters (DE # 46 at 4-5). This argument is unpersuasive for the following reasons.  First, though timely in a technical sense, Medmarc's decision to delay its fundamental objections until the eve of the discovery deadline precludes the Court from fashioning a resolution to this dispute that would require Defendants to pose their questions to Medmarc's corporate representative in a less free-flowing manner, *e.g.*, through written questions or contention interrogatories, and permit a follow-up deposition only if necessary.[3] Second, and more importantly, underlying facts are not considered privileged and thereby immune from discovery merely because they are gathered by a party's attorney. *See Hickman v. Taylor*, 329 U.S. 495, 509 (1947).  A deposition limited to Medmarc's knowledge concerning the facts and events surrounding the insured attorney's representation of the joint venture will not necessarily require the corporate representative to divulge privileged information.  Finally, even if a particular question would call for Medmarc's corporate representative to reveal privileged information, the

---

[3]  At the hearing, Defendants' counsel stated that they had propounded contention interrogatories, and that Medmarc had objected to most of them on substantially the same grounds asserted in the present dispute.  Defendants stated that they were in the process of preparing a motion to compel, but that the necessity of such a motion may be obviated by the deposition presently at issue.

**Federal and Local Rules permit Medmarc to protect that information by lodging contemporaneous objections during the deposition on a question-by-question basis. *See* S.D. Fla. L.R., Appx. A, V.A (setting forth procedural guidelines for invoking claims of privilege during a deposition).**

**B.     Sanctions**

**As stated above, Defendants withdrew their motion for fees and costs as a discovery sanction during the September 18, 2008 hearing, with the exception of any additional expenses associated with acquiring an expedited transcript of Medmarc's 30(b)(6) deposition. Based upon a review of the record as a whole, the undersigned finds that the imposition of sanctions against Medmarc is not warranted. *See* Fed. R. Civ. P. 37(d)(2) ("A failure [to appear for a Rule 30(b)(6) deposition] is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a binding motion for a protective order"). While it is true, as the undersigned noted above, that Medmarc could have raised its objections in a timely manner, Defendants are also responsible for causing the need for an expedited transcript In light of the fact that this deposition was scheduled so close to the motions deadline and the trial date. It is, accordingly,**

**ORDERED AND ADJUDGED that Plaintiff's Motion for Protective Order (DE # 46) is GRANTED IN PART AND DENIED IN PART as set forth below; and, it is**

**ORDERED AND ADJUDGED that Defendants' Motion to Compel and for Sanctions (DE # 48) is GRANTED IN PART AND DENIED IN PART as follows:**

**1.     On or before September 29, 2008, Medmarc shall produce its corporate representative for a deposition limited to facts, events and circumstances relating to the**

Medmarc's contention that the malpractice claims are related and/or arise out of common facts, events and/or transactions (DE # 42 at 2, subsec. (c)).

2. Defendants' motion for sanctions is denied.

**DONE AND ORDERED** in chambers in Miami, Florida on September 19, 2008.

_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Ursula Ungaro,
   United States District Judge
All counsel and *pro se* parties of record